UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOSE DAVIS,** | ) | CASE NO.  1:09CV00357 |
| | ) | |
| **Plaintiff,** | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **OMNI-CARE, INC.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Defendant's Motion for Summary Judgment (ECF DKT #30) as to Plaintiff's claims for retaliation under federal and state law.  For the following reasons, the motion is granted.

**I. FACTS**

Plaintiff Jose Davis ("Plaintiff") is a former employee of Defendant Omni-Care, Inc. ("Defendant").  Defendant is a Fortune 500 company which provides pharmaceutical care for the elderly.  Plaintiff began his employment with Defendant in April of 2001; and continuing until the date his employment ended, Plaintiff worked for Defendant as a Driver Technician.  As a

1

Driver Technician, Plaintiff delivered medical equipment and supplies to both homes and medical service providers. Plaintiff reported directly to the Distribution Manager, Joe Havrilla ("Havrilla"). Havrilla, in turn, reported to the General Manager of the facility, Dana Iacovetta ("Iacovetta").

In January of 2008, Plaintiff noticed what appeared to be a "noose" hanging on the bulletin board of a co-worker. The noose was a "piece of string, approximately six inches in length, which was tied with a slip knot and a loop at the end." (Iacovetta Decl. at ¶9) The co-worker to whom the noose belonged, Tom Butler, claimed that he used the string as a stress-reliever by wrapping it around his finger and pulling it tightly. Plaintiff interpreted the noose as a sign of racial animosity; and on January 31, 2008, he wrote a letter to the Vice President and several other managers in the area in order to formally complain about the noose.

Although Iacovetta was not handed a copy of the letter by Plaintiff, she received a copy from another co-worker shortly after he distributed it. Iacovetta immediately proceeded to the billboard where the noose was displayed, and removed it. She then stated to Plaintiff that she had "handled it." In addition to removing the noose from the billboard, Iacovetta informed the Area Director, Gloria Calhoun ("Calhoun"), and the Human Resource representative for the facility, Tom Masters ("Masters") of the issue later that day. Iacovetta, Calhoun, and Masters collectively discussed the situation, and decided that Calhoun would visit the facility in order to meet with Plaintiff and ensure that he felt comfortable at work.

That same day, Havrilla sent a series of emails to his supervisor, Iacovetta, regarding the noose issue. In one email, Havrilla complained that "everyone is looking at me like I am a monster." (Plaintiff's Depo. Exh. 15.) In a separate email later that day, Havrilla asked

Iacovetta whether he would be fired over the incident. (Plaintiff's Depo. Exh. 16.) Iacovetta responded that the focus would be placed on Plaintiff's method of complaining, rather than on Havrilla.

On February 21, 2008 Calhoun met with Plaintiff to discuss the letter. During the meeting, Calhoun and Plaintiff agreed that there should be diversity training in the workplace. Calhoun claims that Plaintiff further demanded that Havrilla and Iacovetta be fired over the incident. Plaintiff denies this, and says that he just insisted that "everything up to termination" should have been considered. (Davis Depo. at 253) Calhoun then explained that neither Havrilla nor Iacovetta would be fired, considering that neither of them allowed the noose to be displayed once they learned that Plaintiff found it offensive. Plaintiff was not happy with this decision. Later that night, Plaintiff called Calhoun on her cell phone and reiterated that he believed the issue "warranted more than sensitivity training or diversity training." (Davis. Depo. at 188) Calhoun again responded that she was not going to fire anyone over the incident.

On February 22, 2008, the day after Plaintiff's meeting with Calhoun, Defendant claims that Plaintiff stopped answering or returning calls from his router and supervisor regarding deliveries. Havrilla emailed Iacovetta and told her of the "communication breakdown." Plaintiff claims there was no communication breakdown, and that by failing to call back Havrilla and Wilson, he simply followed the same call procedure he had followed for the previous eight years, during which time he never called back to confirm receipt unless he had a question about the order.

Defendant claims that Iacovetta called Plaintiff twice following the communication breakdown, on February 22nd and February 25th, and that Plaintiff failed to answer or return

3

either call.  Plaintiff denies this, however, Plaintiff admits that Havrilla called him on February 22nd in order to arrange a meeting on February 26th.  On the morning of February 26th Plaintiff spotted Havrilla in the warehouse; but, since Havrilla did nothing to initiate the meeting, Plaintiff chose to load his truck and leave to make deliveries.  Later that day Havrilla left a message on Plaintiff's phone stating that if Plaintiff had anything to talk about, Iacovetta and Havrilla would meet with him.  Plaintiff claims that he believed the meeting was optional, and so he did not return the call or return to the facilities to meet with them.

On February 25, 2008, Iacovetta informed Calhoun and Masters of the communication breakdown.  They agreed that they would schedule a meeting with Plaintiff on February 27th in order to discuss it.  Calhoun was to participate in the meeting via conference call.  Iacovetta instructed Havrilla to inform Plaintiff of the meeting, and Havrilla claims he did so on February 26th by leaving a voicemail on Plaintiff's phone, and by placing a note in Plaintiff's mail box.  Plaintiff denies that he received a voicemail or a note from Havrilla regarding the meeting.

On the morning of February 27th, Havrilla went out to where Plaintiff was loading his truck, and informed him of the meeting.  Plaintiff declined to attend the meeting, and said that he had nothing left to talk about.  Havrilla returned to the meeting to report this to the other participants, at which point both Havrilla and Iacovetta went out to where Plaintiff was loading his truck. Havrilla and Iacovetta told Plaintiff that the meeting was mandatory, and that Calhoun was on the phone and wished to speak with him.  The mandatory nature of the meeting appears to be undisputed. Plaintiff admits that he was told "You don't get to choose. You can either sit down and talk to us or you can go home."  (Davis Depo. at 203)  Plaintiff also admits that his supervisors indicated "If you don't sit down and talk to us, we're going to punish you."  *Id.* at

4

205. Plaintiff again refused to attend the meeting, and chose to go home.

After Plaintiff's refusal to attend the meeting, Calhoun, in consultation with Masters, decided to terminate Plaintiff's employment for insubordination. Calhoun claims that she made the decision "based entirely upon his refusal to communicate and, more importantly, refusal to meet with me to discuss the communication issue." (Calhoun Decl. at ¶ 38)  When Plaintiff arrived at work the next day, February 28, 2008,  Havrilla and Iacovetta met him at the door and terminated his employment.  Iacovetta told Plaintiff that he was being terminated for insubordination.

Plaintiff filed his Complaint against Omni-Care on February 17, 2009, asserting state and federal claims for hostile work environment, and retaliation.  Defendant filed its Motion for Summary Judgment as to all claims on February 26, 2010.  Plaintiff filed his Opposition to Motion for Summary Judgment on March 29, 2010.  At that point, Plaintiff chose to withdraw his hostile work environment claims.  Thus, Plaintiff's only remaining claims against Defendant are for retaliation under federal and state law.  Defendant filed a Reply Brief on April 12, 2010.

## II. LAW AND ANALYSIS

### A. Standard of Review

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339,

1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Retaliation

Plaintiff alleges that his complaint about the noose and the termination of his employment with Defendant were causally connected in violation of 42 U.S.C. §2000e, *et seq* and Title VII.  Title VII prohibits an employer from retaliating against an employee who has opposed discriminatory conduct or made " a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

A plaintiff-employee may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the Defendant, or by providing circumstantial evidence which creates an inference of discrimination.  *DiCarlo v. Potter*, 358 F. 3d 408, 414 (6th Cir. 2004).  "Mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination."  *Woythal v. Tex-Tenn Corp.*, 112 F. 3d 243, 247 (6th Cir. 1997).

In the absence of direct evidence of discriminatory retaliation, the Court will apply the burden-shifting analysis announced by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973).  Once an employee-plaintiff makes a prima facie showing of retaliation, the burden "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the employer's conduct.  *Id*.  If the defendant carries this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.*  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Id*.

### C. Prima Facie Elements

An employee-plaintiff may establish a prima facie case of retaliation by demonstrating (1) he engaged in an activity protected by Title VII; (2) the Defendant knew he exercised his rights; (3) the Defendant took an employment action against the plaintiff that a reasonable employee would have found materially adverse; and (4) there was a causal connection between the protected activity and the adverse employment action.  *DiCarlo*, 358 F. 3d at 420.  Plaintiff need not prove his case by a preponderance of evidence at the prima facie stage.  *Singfield v.*

*Akron Metropolitan Housing Authority, et al.*, 389 F. 3d 555, 563 (6th Cir. 2004).  "[T]he burden of establishing a prima facie retaliation case is easily met." *Id*.

There is no dispute that the first three prima facie elements are met in this case.  When Plaintiff wrote a letter complaining about the noose, he engaged in an activity protected by Title VII**.**  Defendant concedes that they knew about the letter**;** and Defendant took adverse employment action against Plaintiff when Plaintiff's employment with Defendant was terminated.  Thus, the final element of causal connection is the only prima facie element at issue here.

The Sixth Circuit has held that in certain circumstances, temporal proximity alone is sufficient to establish the causation element.  *Mickey v. Ziedlander Tool*, 516 F.3d 516, 524 (6th Cir. 2008).  In *Mickey*, the Court stated:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id*.

Plaintiff asserts that the temporal proximity between the termination of his employment with Defendant, and his complaint about the noose is sufficient to establish causation under *Mickey*.  Although the Sixth Circuit has yet to announce a black-letter rule as to what amount of time is enough for a Court to infer causation from temporal proximity alone, the case law on the subject provides significant guidance.  *See, e.g., Singfield*, 389 F.3d at 563 (6th Cir. 2004) (finding that a three-month gap between the protected activity and the adverse employment action is sufficient on its own to establish causation for purposes of a prima facie case); *Goller v.*

*Ohio Dept. of Rehab. & Corr.*, 285 Fed. Appx. 250, 257 (6th Cir. 2008) (citing *Mickey* to hold that a two-month gap is sufficient on its own to establish causation); *Vaughn v. Louisville Water Co.*, 302 Fed. Appx. 337, 349 (6th Cir. 2008) (citing *Mickey* and finding that it is a "close call" as to whether a four-month gap is sufficient to create a causal connection).  Plaintiff was terminated within four weeks of his complaint; thus, this case falls within the first category of cases identified by *Mickey*, in which temporal proximity alone is sufficient to establish an inference of causation.  The elements of a prima facie case of retaliation have been satisfied.

### D. Employer's Non-Retaliatory Explanation

Since Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to "articulate a legitimate, non-retaliatory explanation for the action." *Singfield*, 389 F.3d at 563.  To satisfy its burden, Defendant "need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

To meet this burden, Defendant provides evidence that the proposed meeting between Plaintiff, Iacovetta, Havrilla, Masters and Calhoun on February 27, 2008, was mandatory, and that Plaintiff refused to attend this mandatory meeting.  (Calhoun Decl. at ¶¶27-33; Havrilla Decl. at ¶¶ 16-20; Iacovetta Decl. at ¶¶19-28)  Defendant also provides evidence that Plaintiff was subsequently terminated for insubordination, based upon his refusal to attend the mandatory meeting.  (Calhoun Decl**.** at ¶¶ 36-38)  Defendant has produced admissible evidence, in the form of the above-cited declarations, that would allow a rational trier of fact to conclude that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

9

With this evidence, Defendant successfully meets its burden and rebuts the inference of retaliation.

### E. Pretext

The burden now shifts back to Plaintiff to demonstrate, *by a preponderance of the evidence*, that Defendant's proffered reason for the termination was pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F. 3d 1016, 1021 (6th Cir. 2000). Plaintiff focuses his attempt to show pretext on the first two elements.

The first element consists of showing that "the proffered reasons for the Plaintiff's discharge never happened." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) Plaintiff first argues that the "alleged violation of the over the road procedure" is entirely false. However, the alleged failure of Plaintiff to communicate with his supervisors while making deliveries was not the reason he was terminated. Indeed, Calhoun stated that had Plaintiff met with her on February 27th regarding the alleged communication breakdown, he would probably not have even been disciplined, let alone terminated. Plaintiff also points to the fact that he never missed a delivery during the relevant time period; however, Defendant never claimed that missed deliveries were the reason for the termination either. The evidence shows that the deciding factor which led to Plaintiff's termination was his refusal to meet with his supervisors on February 27th, not his alleged failure to follow the "over the road procedure" or any missed deliveries.

Next, Plaintiff addresses his refusal to meet with his supervisors on February 27th.

Plaintiff refers to the "*alleged* insubordination of Mr. Davis in *allegedly* refusing to meet for a mandatory phone call." (Memo in Opp. at 13) (emphasis added)  Thus, although he does not explicitly say so, Plaintiff suggests that he did not refuse to attend a mandatory meeting with supervisors on February 27th .  This assertion is directly contradicted by the record.  Firstly, Defendant provided evidence that Plaintiff refused to attend the meeting, despite the fact that he was informed attendance was mandatory.  Secondly, Plaintiff himself admits that he was told "You don't get to choose. You can either sit down and talk to us or you can go home."  (Davis Depo. at 203)  Plaintiff also admits that his supervisors indicated "If you don't sit down and talk to us, we're going to punish you." *Id.* at 205.  Still, Plaintiff stated that he chose to go home rather than attend the meeting.  Thus, the mandatory nature of the meeting, and Plaintiff's refusal to attend it are established by Plaintiff himself in his own deposition.

  Finally, Plaintiff argues that the proffered reason did not actually motivate the termination. Under this element, Plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or cover-up." *Manzer*, 29 F.3d at 1084.  Defendant has provided evidence that it was Calhoun, in consultation with Masters, who made the decision to terminate Plaintiff.  Plaintiff has pointed to absolutely no direct or circumstantial evidence of discrimination by Calhoun or Masters, and so Plaintiff cannot argue that Calhoun or Masters themselves had a retaliatory motive when they decided to terminate Plaintiff.  Instead, Plaintiff argues that Havrilla and Iacovetta had retaliatory motivations, and that they in turn *influenced* Calhoun's decision to terminate Plaintiff's employment.  Plaintiff cites a Sixth Circuit case for the proposition that "when an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that

11

supervisor was influenced by another individual who was motivated by such bias . . . the employer may be held liable." *Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir. 2008).

In sum, Plaintiff appears to argue that: 1) Havrilla and Iacovetta had a retaliatory motive towards Plaintiff, as evidenced by their email correspondence immediately following Plaintiff's complaint; 2) Havrilla and Iacovetta distorted and misrepresented Plaintiff's choice not to meet with his supervisors when they spoke to Calhoun on February 27th, in an effort to influence Calhoun's decision; and 3) Calhoun relied on these distortions and misrepresentations and chose to terminate Plaintiff.  Plaintiff adds that Calhoun and Masters "made no attempt to investigate the underlying situation, suggesting a level of complicity beyond merely 'rubber-stamping' the retaliation of Ms. Iacovetta and Mr. Havrilla."  (Memo in Opp. at 15.)

Even construed in the light most favorable to Plaintiff, the facts here are insufficient to establish pretext under the second element.  Assuming, *arguendo*, that the email correspondence between Havrilla and Iacovetta demonstrates that the two had a retaliatory intent, there is still no evidence that they tainted Calhoun's decision to terminate Plaintiff.  Plaintiff points out that it was Havrilla and Iacovetta who told Calhoun of Plaintiff's refusal to attend the meeting on February 27th, and that Calhoun based her decision on this refusal.  But again, Plaintiff admits in his own deposition that he was told  "You don't get to choose. You can either sit down and talk to us or you can go home," and that he subsequently refused to attend the meeting and went home. (Davis Depo. at 203, 205-206)  Given that Plaintiff's account of the interaction on February 27th is entirely consistent with Havrilla's and Iacovetta's, Plaintiff cannot argue that Havrilla and Iacovetta distorted the interaction in an effort to improperly influence Calhoun.

Plaintiff's argument that Calhoun and Masters "made no attempt to investigate the underlying situation, suggesting a level of complicity beyond merely 'rubber-stamping' the retaliation of Ms. Iacovetta and Mr. Havrilla" is also without merit.  (Mem. in Opp. at 14-15)  Indeed, the record shows that Calhoun scheduled a meeting with Plaintiff on February 27th in order to discuss the situation with him.  Presumably, Plaintiff would have had ample opportunity to explain his side of the story had he attended the meeting, but instead he chose to go home.  Plaintiff cannot refuse to attend a scheduled meeting with Calhoun, and then use their failure to meet as evidence of a retaliatory motive on her part.

For the above reasons, Plaintiff has failed to establish that Defendant's proffered reason for the termination was pretextual.  Plaintiff has failed to show that the proffered reason had no basis in fact, or that it did not actually motivate Defendant's decision.  Plaintiff's allegations that Havrilla and Iacovetta tainted Calhoun's decision are speculative, and unsupported by the record.

### F. Plaintiff's State Retaliation Claim

Because Plaintiff's claim for retaliation under Ohio law is analyzed under the same standard as his federal claim, the Court finds that Plaintiff has not satisfied his burden to establish pretext, and summary judgment is granted for Defendant on the state retaliation claim accordingly.  *See Green v. St. Elizabeth Hospital Center*, No. 96-4308, LEXIS 456 at *14 (6th Cir. Jan. 7, 1998)

### III. CONCLUSION

Plaintiff has not carried his evidentiary burden such that a rational trier of fact could conclude that Defendant's reason for terminating his employment was pretextual.  Therefore, Defendant's Motion for Summary Judgment is granted on Plaintiff's retaliation claims under

federal and state law.

       IT IS SO ORDERED.


                                              S/Christopher A. Boyko
                                              CHRISTOPHER A. BOYKO
                                              United States District Judge

June 1, 2010